**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 27, 2025**

# In the Court of Appeals of Georgia

A25A1234. JDZ INVESTMENTS, LLC v. WILMINGTON SAVINGS FUND SOCIETY FSB et al.

RICKMAN, Presiding Judge.

In this action for wrongful foreclosure, JDZ Investments, LLC obtained a default judgment as to liability against Wilmington Savings Fund Society FSB d/b/a Christiana Trust as Trustee for Toorak Repo Seller I Trust, Toorak Capital Partners, LLC, and Cohen Financial (collectively, "Appellees"), but the trial court later struck the complaint and dismissed the action with prejudice as a sanction for JDZ's failure to comply with discovery related to its claim for damages. JDZ argues that the trial court lacked the authority and/or abused its discretion in doing so. We find no error and affirm.

A brief summary of the pertinent, undisputed facts are as follows. In 2017, JDZ purchased four parcels of property and executed a note and security deed in favor of a non-party lender, who later transferred the rights under the note and security deed to Appellees.[1] Asserting that JDZ defaulted on the loans, Appellees initiated foreclosure proceedings in December 2018.

In February 2019, JDZ sued Appellees for wrongful foreclosure. The complaint alleged that JDZ had been making regular loan payments and had recently attempted to refinance the properties, but that Appellees' loan servicer had provided inaccurate payoff information and/or refused to communicate with JDZ. The complaint further alleged that Appellees had scheduled (for the following day) a defective and illegal foreclosure sale of the properties, and sought injunctive relief and a claim for monetary damages "in an amount to be proven at trial."

The non-judicial foreclosure sale took place as scheduled, and the properties were purchased by Appellees. Purportedly believing JDZ was not pursuing its lawsuit

---

[1] The notes were assigned and transferred to Wilmington Savings Fund Society FSB d/b/a Christiana Trust as Trustee for Toorak Repo Seller I Trust, for whom Tarook Capital Partners LLC was the trust administrator and Cohen Financial was the loan servicer.

after the foreclosure sale, Appellees neither filed an answer to the complaint nor sought an extension of time in which to file one.

In November 2019, JDZ filed a motion for default judgment, and Appellees filed a motion to open default. In April 2021, the trial court entered an order granting JDZ a default judgment and denying Appellees' motion to open the default (the "Default Judgment").[2] In the Default Judgment, the trial court explicitly declared that a hearing on damages would be held at a later date.

In September 2022, JDZ filed an amended complaint for wrongful foreclosure, seeking monetary damages[3] to include the loss of rental income and attorney fees and

---

[2] Appellees unsuccessfully sought appellate review of the trial court's orders in this Court.

[3] In the amended complaint, JDZ also sought to set aside the foreclosure sale but the trial court granted Appellees' motion for judgment on the pleadings as to that claim because JDZ failed to tender payment as required by law. See *Underwood v. Colony Bank*, 362 Ga. App. 548, 557 (3) (869 SE2d 535) (2022) ("[W]hen a debtor seeks to set aside a foreclosure sale, he must first pay what he owes to the creditor absent extraordinary circumstances."); see also OCGA § 23-1-10.

expenses.[4] Appellees filed an answer and counterclaim to the amended complaint, and discovery commenced.

In November 2022, Appellees served JDZ with interrogatories and a request to produce documents. After receiving two extensions of time in which to respond, JDZ failed to include many responsive documents, including rental agreements, bank statements, and accounting records related to the monetary damages it sought to recover. In January 2023, Appellants' counsel sent a letter pursuant to Superior Court Rule 6.4 in an effort to address the deficient discovery responses and requested that the responses be supplemented by February 1, 2023. Appellees also requested and were provided dates for JDZ's deposition, and the deposition was noticed for February 16, 2023.

Again, JDZ requested an extension of time in which to supplement its discovery responses, and an extension was given until February 7, 2023. JDZ's deposition was also postponed. After not receiving the supplemental discovery on February 7, Appellees' counsel contacted JDZ's counsel, who represented that JDZ's office had

---

[4] The amended complaint alleged that JDZ suffered a loss of rental income and sale proceeds in the amount of $284,700, and sought to recover those funds in addition to "an amount to be proven at trial." Appellees were not in default as to the new allegations.

experienced a water leak that damaged some of its records and requested another extension, until February 14, 2023, to provide the supplemental production.

After more informal scheduling communications between counsel, JDZ's deposition was re-noticed for April 13, 2023. On April 4, 2023, JDZ's counsel informed Appellees' counsel that JDZ's representative was experiencing health issues and was unavailable to appear on April 13, and suggested the deposition be taken via video conference instead. Appellees' counsel declined the request for a video conference and that same day, asked JDZ's counsel for dates when an in-person deposition could be scheduled.

After unsuccessfully requesting available dates from JDZ, Appellees' counsel again re-noticed the deposition for April 26, 2023. Appellees' counsel also informed JDZ's counsel that if JDZ's representative failed to appear, Appellees would seek court intervention.

On April 24, 2023, JDZ's counsel informed Appellees that JDZ's representative would not be available in-person on April 26, but that its representative could appear virtually that day. In response, Appellees' attorney reminded JDZ that they were entitled to an in-person deposition, which they had been trying to schedule

since January. Nevertheless, in an effort to resolve the scheduling of the deposition without court intervention, Appellees' counsel inquired whether JDZ's representative was "physically unable to appear for a deposition in [counsel's] office" and, if so, whether he could provide a doctor's statement confirming his inability to do so. Counsel further asked if anyone else could testify as JDZ's representative and, if so, when such representative could be available. JDZ's representative responded that he was physically unable to appear in person, that he would provide a doctor's note confirming that fact, and that no one else could testify as JDZ's representative.

Appellees' counsel informed JDZ that in light of its representative's medical condition, Appellees would agree to conduct a deposition via video conference, subject to receiving a doctor's statement. Appellees thereafter served a notice of video deposition on May 10, 2023.

On May 5, 2023, Appellees' counsel sent an email inquiring about the doctor's note and the status of JDZ's supplemental document production. After receiving neither, Appellees again postponed JDZ's deposition.

On May 23, 2023, JDZ finally provided a doctor's note and supplemental discovery that consisted of four additional documents, two of which were already in

the record. The doctor's note stated only that JDZ's representative was unable to sit for prolonged periods of time without frequent and often unexpected bathroom breaks.

On May 31, 2023, Appellees' counsel emailed JDZ's counsel and offered to take the representative's deposition at JDZ's counsel's office or elsewhere within a reasonable driving distance for JDZ's representative, but received no response. Appellees then filed a motion to compel with the trial court.

The trial court conducted a hearing and on January 4, 2024, issued an order granting Appellees' motion to compel (the "Discovery Order"). In the Discovery Order, the trial court ordered that JDZ's representative appear for an in-person deposition at a date, time and location selected by Appellees; that Appellees serve notice of the deposition; that the location for the deposition have readily available bathroom facilities, and JDZ's representative be entitled to as many bathroom breaks as needed; and that within fourteen days of entry of the Discovery Order, JDZ produce all documents in its possession, custody or control responsive to Appellees' requests for production of documents that had not been previously produced. It is

undisputed that JDZ did not produce any additional documents after the trial court issued the Discovery Order.

On March 5, 2024, JDZ's representative was finally deposed. During the deposition, he was unable to answer even the most basic of questions related to the damages being sought by JDZ. He admitted that JDZ had produced no documentation related to three of the four properties that formed the basis of JDZ's complaint, and with respect to the single piece of property about which documents were produced, the production did not include the lease or any other evidence of rent collected. JDZ's representative also admitted that he had made little effort to look for documents responsive to the discovery requests, while also revealing that some responsive documentation did exist.

Following the deposition, Appellees filed a motion for sanctions, seeking a dismissal of JDZ's complaint with prejudice for JDZ's willful violation of the Discovery Order. In its response to the motion, JDZ, which had retained new counsel, represented to the trial court that JDZ's prior counsel had not shown its representative the Discovery Order and, consequently, the representative was unaware of it until August 2024. Contrary to that representation, however, the record

plainly revealed that the representative was shown and asked about the Discovery Order in his March deposition, and he affirmatively confirmed that he had seen the order.

After conducting a hearing, the trial court granted the motion for sanctions and dismissed JDZ's complaint with prejudice. In so doing, the trial court explicitly found that JDZ acted "willfully, in bad faith and with a conscious indifference to the consequences of failing to comply with the Discovery Order." This appeal followed.

JDZ argues, in essence, that the trial court was not authorized to dismiss its complaint because the Default Judgment was "a final order" and, to the extent a sanction was warranted, the trial court abused its discretion by invoking the extreme sanction of dismissal. We disagree.

First, the Default Judgment was not a final order. Rather, by its express terms, it granted JDZ judgment as to liability, but provided that a hearing on damages would be conducted at a later date. See OCGA § 9-11-54 (b).[5]

---

[5] OCGA § 9-11-54 (b) provides that,

When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . upon an express determination that there is no

9

Regardless, when a party fails to obey an order to provide or permit discovery, Georgia law authorizes the trial court to "make such orders in regard to the failure as are just," which may include "[a]n order striking out pleadings . . . or dismissing the action or proceeding or any part thereof." OCGA § 9-11-37 (b) (2) (C). We have cautioned that "[t]he drastic sanctions found in OCGA § 9–11–37 (b) (2) (C) cannot be invoked except in the most flagrant cases—where the failure is wil[l]ful, in bad faith or in conscious disregard of an order." (Citation and punctuation omitted.) *Didio v. Chess*, 218 Ga. App. 550, 551 (462 SE2d 450) (1995). But, the striking of a complaint and dismissal of an action is appropriate when there has been "a conscious or intentional failure to act, as distinguished from an accidental or involuntary non-compliance." (Citation and punctuation omitted.) Id. We will not reverse a trial

---

just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

court's imposition of a discovery sanction absent a clear abuse of discretion. See *Amaechi v. Somsino*, 259 Ga. App. 346, 347 (577 SE2d 48) (2003).

Given that JDZ essentially refused to participate in discovery throughout the entirety of the discovery period, the record fully supports the trial court's determination that it acted wilfully, in bad faith, and in conscious disregard of the Discovery Order. See *Schrembs v. Atlanta Classic Cars, Inc.*, 261 Ga. 182, 183 (402 SE2d 723) (1991) ("[E]vents transpiring during [the] entire [discovery] time period are probative of whether appellant acted with conscious indifference to the consequences of failure to comply with the [trial court's] order. . . .") (citation and punctuation omitted). As a result of that willful conduct, the trial court did not abuse its discretion by dismissing the complaint with prejudice. See OCGA § 9-11-37 (b) (2) (C); *Exum v. Norfolk Southern R.*, 305 Ga. App. 781, 782-783 (1) (701 SE2d 199) (2010); *Amaechi*, 259 Ga. App. at 347.

*Judgment affirmed. Gobeil and Davis, JJ., concur.*